# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DAVID C. ZELLER, #369326, 30822 | * |
| Plaintiff, | * |
| v | * Civil Action No. PWG-17-3136 |
| WEXFORD HEALTH SOURCES, INC., AYOKU OKETUNJU, M.D., and BOLAJII ONABAJO, | * |
| Defendants. | * |

## MEMORANDUM OPINION

David C. Zeller is an inmate at Western Correctional Institution (WCI) in Cumberland, Maryland. He alleges in this *pro se* Complaint that he was denied treatment for Hepatitis C (HCV) for more than five years, beginning in 2011. *See* Compl. 3, ECF No. 1; Suppl. 1, ECF No. 3; Opp'n 5-8, ECF No. 20. He seeks an injunction requiring prison health care providers to "fully cooperate" with him, put him back on pain medication, and renew treatment for his "already serious" condition. Compl. 5-6.

Defendants Wexford Health Sources, Inc. (Wexford); Ayoku Oketunji, M.D.; and Bolaji Onabajo, M.D., have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 17, which has been fully briefed, ECF Nos. 20, 21. I conclude that there remains a genuine dispute of material fact in this case and so will deny the motion.[1] To assist Zeller as this case proceeds, I am granting his motion for appointment of counsel. ECF No. 24.

---

[1] Also pending is Zeller's Motion for an Extension of Time, ECF No. 19, which will be granted *nunc pro tunc*.

## Background

Zeller alleges that prior to his incarceration in 2011, he was diagnosed with "stage III" Hepatitis C and treated with pegylated interferon/ribavirin. Compl. 4; ECF No. 3-1; Opp'n 2-4. Zeller acknowledges that between November 2016 and December 31, 2016, prison medical providers treated him with Harvoni,[2] but the Harvoni treatment proved unsuccessful, and Dr. Oketunji informed him there was "nothing else to offer" him. April 2017 Visit Report 1, ECF 3-1; *see* Compl. 4. Zeller alleges the lengthy delay providing him treatment with Harvoni diminished its efficacy. *See* Opp'n 7-8.

Defendants have provided with their dispositive motion verified copies of Zeller's medical records, the earliest dated July 27, 2016. ECF No. 17-4.[3] Additionally, Defendants have filed a Hepatitis C-related excerpt from the Department of Public Safety and Correctional Services (DPSCS) Office of Clinical Service/Inmate Health Infection Control Manual (ECF No. 17-6)[4] and Dr. Oketunji's affidavit (ECF No. 17-5).

Dr. Oketunji's affidavit summarizes current hepatitis management protocols at DPSCS facilities. He states that, in view of the potential side effects and expense of antiviral therapy, it is not recommended for a patient to begin antiviral therapy for genotype 1 HCV based solely on a positive test for HCV.[5] Oketunji Aff ¶ 10, ECF No. 17-5. In cases such as Zeller's, he states,

---

[2] Harvoni is the brand name for the combination of ledipasvir and sofosbuvir and is used alone or in combination with ribavirin to stop the virus that causes HCV from spreading in the body. *See* https://medlineplus.gov/druginfo/meds/a614051.html#brand-name-1 (last reviewed March 5, 2019)

[3] Wexford became the medical services provider for various Maryland state prisons in July 2012. The medical contractor prior to Wexford was Correctional Medical Services, Inc. *See, e.g., Toomer v. Warden*, No. DKC-13-614, 2015 WL 412935, at *1 (D. Md. Jan. 29, 2015).

[4] The effective date of the policy is not indicated. It is unclear what policy, if any, was in effect at the time Zeller became an inmate in the custody of the Maryland Department of Correction.

[5] It is not clear from the record when Zeller was first tested for HCV in the Division of Correction (DOC) and when his genotype was determined.

2

DPSCS HCV policy requires performing a liver biopsy or FibroScan. *See id.* The results are reviewed by a DPSCS statewide HCV panel of medical providers, pharmacists, mental health providers, and infectious disease specialists to determine if the patient is at a stage of infection that warrants antiviral therapy, to approve a specific antiviral therapy regimen, and to establish prioritization of the therapy. *See id.* Dr. Oketunji states that pegylated interferon/ribavirin was the treatment approved most often. *See id.* ¶ 12.

Dr. Oketunji characterized Zeller as a 65 year old with a history of schizophrenia and schizoaffective disorder. *See id.* ¶ 4. Zeller was approved for and began pegylated interferon/ribavirin treatment in 2015, but treatment ended because the medication exacerbated his mental health condition, a common side effect. *See id.* ¶ 12. Dr. Oketunji states that, until 2015, "there were no other antiviral treatment therapies generally approved by DPSCS." *Id.* He notes, however, that "[s]ince 2012 other antiviral treatment options available, including, *inter alia*, Harvoni, have been approved for inmates by the DPSCS HCV panel on a *case by case basis*." *Id.* ¶ 13 (emphasis in original). He explains that, since 2015, alternative antivirals have become more available, with Harvoni as the "treatment of choice due to its proven high efficacy and reduced side effects." *Id.* His affidavit states:

> The DPSCS HCV panel has been systematically treating inmates with more advanced grade and stage levels of HCV and working down to less advanced grade and stage levels (grades (G) of necrosis/inflammation are 1 minimal, 2 mild, 3 moderate, 4 severe; staging (S) is 1 no scarring, 2 mild scarring, 3 moderate scarring, and 4 severe scarring "cirrhosis"). Plaintiff's September 2016, liver biopsy presented a level G1[6] S1. By late 2016, patients with level G1 S1 were being considered for alternative treatment.

---

[6] "At least six specific strains—called genotypes—of hepatitis C exist. Genotype 1 is the most common hepatitis C genotype in the United States." *What Is Hepatitis C?*, Nat'l Inst. of Diabetes & Digestive & Kidney Diseases, https://www.niddk.nih.gov/health-information/liver-disease/viral-hepatitis/hepatitis-c. (last reviewed March 5, 2019).

*Id.*

In November 2016, Zeller started an eight-week course of Harvoni. *See id.* ¶ 14. The treatment ended in December 2016. *See id.* Zeller's three-month post treatment viral load[7] increased, which indicated that treatment was ineffective. *See id.* Dr. Oketunji states there are presently no other treatment options available for HCV patients who have failed Harvoni treatment. *See id.* ¶ 15. Zeller is regularly monitored, his hepatitis function is tested, and he shows no advanced symptoms of cirrhosis. *See id.* ¶ 16. He was administered Twinrix, a vaccine that provides active immunity against the Hepatitis A and B viruses, as a precautionary measure for inmates testing positive for HCV. *See* Oketunji Aff. ¶¶ 8, 16.

## Standard of Review

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). A court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (stating the pleadings of a *pro se* litigant are to be liberally construed). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex*

---

[7] "Viral load is a measurement of the quantities of HVC virus RNA, the building block of the virus, in the blood." Oketunji Aff. ¶ 9.

*Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

## Discussion

The Eighth Amendment, as incorporated by the Fourteenth Amendment, prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to "deliberate indifference" to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it. . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999).

"[D]eliberate indifference requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Id.* at 696 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). In cases like this, there must be a showing that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective component is satisfied only where a prison official "subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer*, 511 U.S. at 837); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Jackson*, 775 F.3d at 178 ("[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference.").

If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. The reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001). The patient's right to treatment is "limited to that which may be provided upon a reasonable cost and time basis

and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

The gravamen of Zeller's Complaint is that he was denied treatment for HCV until some five years after he entered the custody of the DOC. Defendants have provided verified records and other evidence to demonstrate that since 2015, Zeller has been provided treatment. The first course of treatment was stopped due to side effects. The second course of treatment, Harvoni, "the treatment of choice," Oketunji Aff. ¶ 13, was administered in 2016 and proved ineffective. Zeller's condition is monitored even though there currently are no other treatment options available to him.

But, apart from a general description of the HCV treatment policy prior to this time, Defendants provide no medical records or specific facts to dispute Zeller's allegation that he was denied treatment for several years for his condition or that the claimed delay prevented a positive response to the later-administered Harvoni. Viewing the facts in the light most favorable to Zeller—who, it bears repeating, is self-represented—I conclude a genuine dispute exists as to material facts, *i.e.*, whether Defendants acted with requisite deliberate indifference by denying Zeller treatment for his HVC for more than four years. Accordingly, summary judgment is not appropriate.

### **Appointment of Counsel**

Zeller has moved for court-appointed counsel. ECF No. 24. Because discovery likely will be needed to obtain additional medical records and to discern the names of medical providers and state corrections officials who may have been involved in the issues alleged, I am granting the motion.

## Conclusion

Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 17) is denied. This case will proceed, with counsel appointed to represent Zeller.

A separate order follows.

3/11/19
Date

Paul W. Grimm
United States District Judge